IN THE MATTER OF:

    Case No. 12-61274-wsd
    Hon. Walter Shapero
HUDSON BRICK YARD, INC.,     Chapter 7
    Debtor.

Basil T. Simon (P26340)    Scott A. Chernich (P48893)
Stephen P. Stella (P33351)    FOSTER, SWIFT, COLLINS & SMITH, PC
Attorneys for Debtor    Attorneys for Claimant Zion First National Bank
422 W. Congress, Suite 400    313 S. Washington Square
Detroit, MI 48226    Lansing, MI 48933
(313) 962-6400    (517) 371-8133
bsimon@sszpc.com    schernich@fosterswift.com
attorneystella@sszpc.com

Denis F. Jodis (P15506)
LAW OFFICES OF DENIS F. JODIS, P.C.
Attorney for Carl E. Brittain & Heidi S. Brittain,
& others named below
216 N. Main St.
Adrian, MI 49221
(517) 265-4415
djodis@frontier.com

**PROPOSED FINDINGS OF FACT**
**AND CONCLUSIONS OF LAW**

NOW COME, James Austin, Helga Austin, John Spink, Tammy O'Shea, William Bendley, Jr., Mike Loomis, Rhonda Loomis, Jessica O'Shea, Gary Spink, and Night Lites of Jackson, LLC, claimants, in the above entitled matter and for their Proposed Findings of Fact and Conclusions of Law, state as follows:

**I. PROPOSED FINDINGS OF FACT**

On April 9, 2007, the Debtor, as borrower, and the Bank of Lenawee, as lender, entered into a Promissory Note bearing Loan No. 100700715 (hereinafter referred to as "Note 0715"), whereby the Debtor borrowed from the Bank of Lenawee the amount of One Hundred Thousand and 00/100 ($100,000.00) Dollars.

LAW OFFICES
of
DENIS F. JODIS, P.C.

216 N. Main Street
Adrian, Michigan 49221
(517) 265-4415

12-61274-wsd    Doc 70    Filed 12/22/12    Entered 12/22/12 13:03:33    Page 1 of 17

The Bank of Lenawee and FFB merged into one entity with FFB being the survivor in March, 2008. After the date of merger, the Bank of Lenawee no longer existed nor did it function as a bank.

On or about August 25, 2008, the Debtor and FFB entered into a loan transaction in which the proceeds, which came from FFB, paid off the remaining obligation on Note 0715, evidenced by a Promissory Note bearing Loan No. 7661297837 (hereinafter referred to as "Note 7837"), in the principal amount of Ninety-Eight Thousand and 00/100 ($98,000.00) Dollars. (Exhibit E, Note 7837.)

The Debtor maintained its pledge of collateral by executing a Commercial Security Agreement bearing Loan No. 6671297837, whereby the Debtor granted FFB a secured interest in all of Debtor's "Inventory, Accounts, Equipment and General Intangibles." (Exhibit E, Commercial Security Agreement.)

On or about January 29, 2010, the Debtor and FFB entered into a second renewal, evidenced by a Promissory Note bearing Loan No. 661304088 (hereinafter referred to as "Note 4088"), in the principal amount of Seventy Thousand Five Hundred and 63/100 ($70,500.63) Dollars. (Exhibit D, Note 4088.) The Debtor maintained its pledge of collateral by executing a Commercial Security Agreement bearing Loan No. 661304088, whereby the Debtor granted FFB a secured interest in all of Debtor's "Inventory, Accounts, Equipment and General Intangibles." (Exhibit D, Commercial Security Agreement.)

The loan transactions between the Debtor and FFB that occurred after the merger in March, 2008, took place between FFB and Debtor. Bank of Lenawee was totally out of the picture and the financial arrangements constituted a different lender (see the definition of "lender" which appears on page 4 of the Commercial Security Agreement which was used in connection with the loan transactions between FFB and Debtor. It reads, "the word "lender" means First Federal Bank of the Midwest, its successors and assigns.") This is FFB's own document. In order to perfect its security

LAW OFFICES
of
DENIS F. JODIS, P.C.

216 N. Main Street
Adrian, Michigan 49221
(517) 265-4415

interest as the Lender, the UCC requires that it file a Financing Statement which it did not do until May 13, 2012. FFB never filed a UCC Financing Statement with the State of Michigan on April 10, 2007; that Financing Statement was filed by the Bank of Lenawee. The Bank of Lenawee never loaned the Debtor money after the date of the merger between FFB and the Bank of Lenawee.

If FFB had a legal right to rely on the Financing Statement filed by Bank of Lenawee, why did it belatedly file UCC statements on May 13, 2012?

The failure of FFB to file Financing Statements until May 13, 2012, resulted in it having an unperfected security interest in any of the collateral it now claims. As to any transactions involving Debtor's transfer or sale of inventory or equipment that occurred prior to May 13, 2012, they are beyond the reach of FFB. If the Court agrees that FFB did not have a perfected security interest in the collateral until May 13, 2012, did the tardy filing result in a perfected Security Agreement in any of the remaining collateral on or after May 13, 2012?

Customer Claims, in General:

FFB is contesting a number of claims based upon one or more theories. For the sake of brevity, a general discussion of those theories follows:

Comingled Goods:

FFB has raised the issue of "comingled goods" with respect to various claims. The contested goods were all bought and paid for and FFB has not produced a single shred of evidence to refute that fact. Each claimant has a sales slip or document that clearly identifies the goods that were purchased. A careful review of the documents indicates that the goods were identifiable by color, design, manufacturer, etc. Testimony clearly established that the brick and stone products were stored in various places around Debtor's premises. Each type, style, or color of product had its own pile. None of the contested product was identical to any other on the premises. It is entirely possible that with respect to some particular purchases, the product purchased was only

LAW OFFICES
of
DENIS F. JODIS, P.C.

216 N. Main Street
Adrian, Michigan 49221
(517) 265-4415

12-61274-wsd    Doc 70    Filed 12/22/12    Entered 12/22/12 13:03:33    Page 3 of 17

a part of the total inventory on hand, however, if that were the case it would not be any problem for the purchaser or the Debtor, based on the documentation of the particular sale, to identify how much of the pile belonged to the claimant purchaser.

Consignment

The following language is from MCL §440.9102(t):

> (t) "Consignment" means a transaction, regardless of its form, in which a person delivers goods to a merchant for the purpose of sale and that meets all of the following:
>
>> (*i*) The merchant deals in goods of that kind under a name other than the name of the person making delivery, is not an auctioneer, and is not generally known by its creditors to be substantially engaged in selling the goods of others.
>>
>> (*ii*) With respect to each delivery, the aggregate value of the goods is $1,000.00 or more at the time of delivery.
>>
>> (*iii*) The goods are not consumer goods immediately before delivery.
>>
>> (*iv*) The transaction does not create a security interest that secures an obligation.

To apply a consignment must meet all four subsections. None of Claimant's transactions with Debtor qualify as "consignments".

"Buyer in Ordinary Course of Business"

MCL § 440.9306(2) provides in part:

> (a) Except where this article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor.

MCL § 440.9306(2)

MCL § 440.9307(1) provides an exception to the general rule of MCL § 440.9306(2)

LAW OFFICES
of
DENIS F. JODIS, P.C.

216 N. Main Street
Adrian, Michigan 49221
(517) 265-4415

12-61274-wsd    Doc 70    Filed 12/22/12    Entered 12/22/12 13:03:33    Page 4 of 17

and states in part:

> [A] buyer in ordinary course of business, as defined in section 1201(9), takes free of a security interest created by his or her seller even though the security interest is perfected and even though the buyer knows of its existence.

MCL § 440.9307(1).

In Nashville Eagle, Inc. v. Ford Motor Credit Co. (*In re Superior Ground Support*), 140 B.R. 878 (Bankr.W.D.Mich.1992), the court explained the purpose of 9–307:

> [Section 9–307] exists to protect good faith purchasers from the seller's inventory. Rather than requiring a buyer to research the status of the seller's inventory each time there is a purchase, the burden is placed on the lender secured by the inventory to keep regular account and make sure that the overall value of its collateral is not declining. The secured creditor is not often harmed by this provision. Under Mich. Comp. Laws Ann. § 440.9306 (Supp.1992), the creditor's lien interest continues in the proceeds of any sale. Overall, by facilitating the debtor's sales, these sections of the U.C.C. work to the benefit of both parties. The debtor can freely sell its inventory for a profit while the lender's security interest continues in new inventory purchased with the profit and in the proceeds generated by sales.

*Id.* at 880–81.

MCL § 440.1201(9) defines the term "buyer in ordinary course of business" as:

> a person that buys goods in good faith, without knowledge that the sale violates the rights of another person in the good, and in the ordinary course from a person, other than a pawnbroker, in the business of selling goods of that kind. A person buys goods in the ordinary course if the sale to the person comports with the usual or customary practices in the kind of business in which the seller is engaged or with the seller's own usual or customary practices.... A buyer in ordinary course of business may buy for cash, by exchange of other property, or on secured or unsecured credit, and may acquire goods or documents of title under a preexisting contract for sale.... A person that acquires goods in a transfer in bulk or as security for or in total or partial satisfaction of a money debt is not a buyer in ordinary course of business.

MCL § 440.1201(9)

A. <u>Claim of James & Helga Austin</u>

Based on the facts set forth in FFB's Proposed Findings of Facts and Conclusions of Law, all of the Austin claims are based on transactions that occurred prior to the May 13, 2012 date on which FFB filed its Financing Statements. Until that time, FFB had an unperfected security interest.

FFB did not have a lien on the title of the 1999 Dodge Ram One Ton Truck; that

LAW OFFICES
of
DENIS F. JODIS, P.C.

216 N. Main Street
Adrian, Michigan 49221
(517) 265-4415

12-61274-wsd    Doc 70    Filed 12/22/12    Entered 12/22/12 13:03:33    Page 5 of 17

lien was in the name of the Bank of Lenawee. The loan secured by the truck had been paid off. Contrary to FFB's contention, it never lent any money to Debtors on the truck nor was there any money owed on the truck loan at the time of the merger. FFB never <u>perfected</u> its security interest in this truck.

The items described in Exhibit 4, Exhibit 7, Exhibit 8, Exhibit 5, Exhibit 44, and those exhibits pertaining to the titles to the Dodge Truck, the trailer, and the Mack Truck show transfer signatures prior to the filing of any UCC Financing Statements by FFB, and, therefore, those items should lawfully belong to the Austins.

The Mack Truck was titled to Mr. and Mrs. Brittain, not the Debtor. As such, it was not covered by any Security Agreement because it did not belong to the Debtor. The transfer of title by the Debtor's principals who owned the Mack Truck to Austin does not violate any security interest of FFB because FFB never had it as security, perfected or not. In summary, the failure of FFB to have or perfect its security interest in the collateral Austin's claim, it should be awarded to them because the relevance of "buyer in the ordinary course" does not apply. Even if it did, the only testimony as to the value of the items purchased by the Austins was the testimony of James Austin who indicated that what he paid exceeded the value of the items. This testimony stands as being unreputed.

    B.    <u>Night Lites of Jackson, LLC</u>

Night Lites of Jackson, LLC claim is based on a transaction dated December 30, 2011, prior to the May 13, 2012 date on which FFB filed its UCC Financing Statement. Based on the same reasoning and references applicable to the Austin claim, they are incorporated as if set forth fully herein. Claimant, likewise, incorporates by reference the language set forth under the heading "Comingled Goods", (pg. 3): Consignment; and Buyer in Ordinary Course of Business, the later two appearing on page 4 herein.

    C.    <u>Claim of Gary Spink</u>

LAW OFFICES
of
DENIS F. JODIS, P.C.

216 N. Main Street
Adrian, Michigan 49221
(517) 265-4415

The testimony of Gary Spink and Exhibit 17 clearly show that this transaction took place prior to May 13, 2012, the date on which FFB filed its UCC Financing Statement. Based on the same reasoning and references applicable to the Austin claim, they are incorporated as set forth fully herein. Likewise, the Comingled Goods, Consignmenrt, and Buyer in Ordinance Course of Business comments are hereby incorporated by reference.

D. Claim of John Spink

The testimony of establishes that the tractor was placed by him on the Debtor's premises prior to May 13, 2012 which was a date FFB filed its UCC Financing Statement. Based on the same reasoning and references applicable to FFB's unperfected security interest, it was already on the premises when FFB attempted to perfect its security interest by filing and since it did not belong tot he Debtor and FFB failed to exercise due diligence as to its status, John Spink should be granted possession of his tractor.

FFB is grasping at straws in its effort to employ the concept of "consignment" to defeat the right of John Spink to have possession and recover his tractor. FFB incorrectly reads MCL §440.9102(t) in asserting that it applies to the relationship between John Spink and the Debtor.

Consignment

The following language is from MCL §440.9102(t):

> (t) "Consignment" means a transaction, regardless of its form, in which a person delivers goods to a merchant for the purpose of sale and that meets all of the following:
>
> > (*i*) The merchant deals in goods of that kind under a name other than the name of the person making delivery, is not an auctioneer, and is not

LAW OFFICES
of
DENIS F. JODIS, P.C.

216 N. Main Street
Adrian, Michigan 49221
(517) 265-4415

generally known by its creditors to be substantially engaged in selling the goods of others.

(*ii*) With respect to each delivery, the aggregate value of the goods is $1,000.00 or more at the time of delivery.

(*iii*) The goods are not consumer goods immediately before delivery.

(*iv*) The transaction does not create a security interest that secures an obligation.

To apply a consignment must meet all four subsections. None of Claimant's transactions with Debtor qualify as "consignments".

"Buyer in Ordinary Course of Business"

Clearly, the testimony demonstrates that the Debtor (merchant) did not deal in tractors thereby failing to meet the requirement of (t)(*i*) . Likewise, (t)(*iii)* is not met because the tractor was obviously a "consumer good" immediately before its delivery to Debtor's premises. Finally, (t)(*iv)* was not met as the transaction between John Spink and the Debtor did not create a security interest that secured an obligation.
FFB filed its UCC Financing Statement long after the tractor was placed on Debtor's property by John Spink. The Bank of Lenawee no longer existed. Debtor's debt to FFB resulted from Debtor's execution of FFB documents after the merger with Bank of Lenawee. FFB, if it ever complied with perfecting its Security Agreement and interest did so upon filing its Financing Statements on May 13, 2012. Contrary to FFB's assertion that it filed a UCC Financing Statement on April 10, 2007, the truth of the matter is that Financing Statement was filed by Bank of Lenawee.

Although FFB did not claim Spink should lose his tractor because it "comingled goods", it is clear that the tractor did not meet the definition of "comingled goods" as set forth in MCL §440.9336(1).

It is, therefore, John Spinks' position that FFB has no lawful right to deprive

LAW OFFICES
of
DENIS F. JODIS, P.C.

216 N. Main Street
Adrian, Michigan 49221
(517) 265-4415

him of the tractor.

  E.  Claim of Tammi O'Shea

The items claimed by Tammi O'Shea based on the transactions she testified to and the exhibits she presented demonstrate her interest occurred prior to May 13, 2012, the date when FFB first attempted to perfect its security interest by filing UCC statements.

FFB claims that the Miscellaneous Inventory and Christmas Inventory claimed by Tammi O'Shea was subject to FFB's superior security interest as it was "comingled" with the Debtor's property in a manner that it was not possible to separate it from the Debtor's.

The testimony and exhibits connected with Tammi O'Shea's claim clearly indicate that the items she claims were not "comingled".

Tammi O'Shea testified that the miscellaneous inventory and Christmas inventory was either stored in crates in a storage building located on the Debtor's property and that these crates had pieces of paper attached to them with her name. This storage building was described as being not open to the public.

Tammi O'Shea also testified and provided as exhibits some photographs indicating that the items she claims that were not in the other building were located in bags or boxes located next to her desk. Common sense would be offended by concluding that Christmas items and the other type of items that were bagged or boxed next to her desk would be construed as store inventory.

FFB offered no proofs to contradict the testimony of Tammi O'Shea regarding her claim. Tammi O'Shea's uncontroverted testimony fully supports her claim. FFB would like the court to assume that the checks introduced into evidence constitute restitution payments or an investment to the start-up of Hudson Brick & Stone, however, there is absolutely no proof to support this assertion. Despite FFB's efforts to create "comingling" the court would have to find that Tammi O'Shea's complete

LAW OFFICES
of
DENIS F. JODIS, P.C.

216 N. Main Street
Adrian, Michigan 49221
(517) 265-4415

testimony was untrue.

There is nothing in the testimony to support FFB's contention that Debtor intended to sell any of the personal property identified by the claim of Tammi O'Shea.

The definition of "comingled goods" set forth in MCL §440.9336(1) requires that, "as used in this section, "comingled goods" means goods that are physically united with other goods in such a manner that their identity is lost in a product or mass."

The testimony of Tammi O'Shea clearly indicates that the items subject to her claim were not "physically united with other goods in such a manner that their identity is lost in a product or mass." The items claimed by Tammi O'Shea in the storage building were out of the area open to the public and were also identified with her name on them. The items inside the store were packaged in boxes or bags located next to her desk. There is no physical unity nor was there any testimony to the contrary.

Next, FFB claims that if the property listed by Tammi O'Shea was hers, FFB has a superior claim to that property because she would be classified as a co-signer. For the same reasons discussed previously regarding the John Spink tractor, there are no facts or law to support the consignment theory.

The claim of Tammi O'Shea should be granted in full. In the absence of proof to the contrary, the items she claims were bought and paid for by her. They were not comingled with Debtor's property nor consigned to Debtor.

### 5. Claims Made Pursuant to Purchases from Hudson Brick & Stone

Debtor's principal, Heidi Brittain, testified that there came a time when she and her husband, Carl Brittain, became aware that the State of Michigan had automatically dissolved Hudson Brick Yard, Inc. because it failed to file the necessary annual corporate reports. As a result of this information, Debtor's Principals formed a d/b/a named Hudson Brick & Stone on March 20, 2012. The corporate entity was automatically dissolved by the State of Michigan on July 15, 2009. Until the Debtor's principals became aware of the dissolution of the corporation, they operated under its

LAW OFFICES
of
DENIS F. JODIS, P.C.

216 N. Main Street
Adrian, Michigan 49221
(517) 265-4415

12-61274-wsd    Doc 70    Filed 12/22/12    Entered 12/22/12 13:03:33    Page 10 of 17

name and as if it was fully and legally in existence.

Hindsight being what it is, the Debtor's principals could have easily reinstated the corporate existence of Debtor by paying the appropriate filing fees and filing the appropriate forms with the State of Michigan.

FFB, as a result of its failure to properly follow up on the corporate status of its corporate customers claims it did know the Debtor's corporate existence had been dissolved until sometime after the Debtor's principals became aware of the situation.

F.  Claim of William J. Bendley, Jr.

William J Bendley, Jr. purchased and paid $1,100.00 for brick and stone as identified in Exhibit 15 and Exhibit 16 of FFB's Proposed Findings of Facts and Conclusions of Law after May 13, 2012, the date FFB filed its UCC statements. Testimony from Heidi Brittain would indicate that this was either "old" inventory or inventory that had been acquired by and paid for Hudson Brick & Stone at a close out price from the manufacturer.

Mr. Bendley purchased and paid for this inventory without any real or imagined knowledge that he was purchasing it from the Debtor or Hudson Brick & Stone. Mr. Bendley was not interested in sophistry of the legal name of the seller. From the standpoint of the UCC, from the standpoint of a buyer, it mattered not what the name of the business was.

FFB's assertion that the inventory claimed by Mr. Bendley was "comingled goods" is subject to the general comments previously set forth regarding same.

Likewise, FFB's assertion that Mr. Bendley's claim should fail because he was not a "buyer in the ordinary course of business" is not applicable and is subject to the general comments previously set forth regarding same.

The fact that a buyer gets a "good deal" does not disqualify them from being a "buyer in the ordinary course of business" or as a buyer of "consumer goods".

G.  Claims of Mike Loomis, Rhonda Loomis, and Jessica O'Shea

LAW OFFICES
of
DENIS F. JODIS, P.C.

216 N. Main Street
Adrian, Michigan 49221
(517) 265-4415

FFB requests that the claims of Mike Loomis, Rhonda Loomis, and Jessica O'Shea be denied because they did not physically appear in court. However, Heidi Brittain identified their purchased documents which are Exhibit 24, Exhibit 25, and Exhibit 26 of FFB's Proposed Findings of Facts & Conclusions of Law. These exhibits were admitted and clearly established that the transactions took place and that the sales price was paid.

Contrary to the assertion of FFB that it would be impossible to determine what material was property of the Debtor vs. Hudson Brick & Stone, the testimony clearly indicates that the employees of Debtor could clearly locate the items by simply locating their respective storage piles. Looking at the exhibits indicates that the items purchased by these claimants can be clearly identified. Previous discussion regarding the FFB position on comingling are hereby referenced as if set forth fully at this point.

Heidi Brittain testified from one or more exhibits that indicated some of the claimants' purchases were from materials that were purchased by Hudson Brick & Stone, and not the Debtor.

From the standpoint of these claimants, it was immaterial to them whether the seller was the Debtor or Hudson Brick & Stone.

It is these claimants' position that even if FFB had a security interest in the inventory they purchased, their purchase took free and clear of that security interest because they met the standards of being a "buyer in the ordinary course of business, as defined under MCL §440.1201(9) and they were a buyer of "consumer goods" as defined under MCL §440.9320(2). As with all the other claimants, their claim should not be denied due to the failure of FFB taking steps to protect its secured collateral by requiring the Debtor to set aside or separate from unsold inventory all inventory that was sold. As a practical matter, Heidi Brittain and Tammi O'Shea both offered testimony to establish that the Debtor never found it necessary in the conduct of its business to set aside sold inventory and common sense would lead one to the

conclusion that doing so would have resulted in unnecessary time and labor being expended to separate sold inventory from unsold inventory. Testimony also establishes that as it related to brick and stone, customers of Debtor frequently left it on the Debtor's premises until a later date when it could either be delivered or the customer could pick it up.

The claim of Jessica O'Shea also included an air conditioner. The uncontroverted testimony of Heidi Brittain establishes that this air conditioner was purchased by them for Jessica O'Shea from Sam's Club. It had paperwork attached to it. Clearly, it is not the type of inventory that was sold by the Debtor. It was purchased with funds that belonged neither to the Debtor or Hudson Brick & Stone.

There is no evidence to indicate that the window air conditioner was purchased for the business of either the Debtor or Hudson Brick & Stone. Testimony was introduced indicating that air conditioning in certain areas of the building had been turned off in order to conserve electricity and that the office areas were only air conditioned which negates any idea the air conditioner was for use in Debtor's business. In summary, there is nothing on the record to indicate that the air conditioner was an asset of the Debtor and there is nothing, legally or factually, to establish that the air conditioner belonged to anyone but Jessica O'Shea. If anything, the factual circumstances related to the air conditioner was whether or not a bailment was created. Under Michigan law, "bailment" imports the delivery of personal property by one person to another in trust for a specific purpose, with a contract, expressed or implied, that the trust shall be faithfully executed and the property returned or duly accounted for when the special purpose is accomplished. In re Zwagerman 115B.R. 540, 547(w.d.Mich.1190) but for the action of FFB locking the doors of the Debtor's business, there can be no question that the air conditioner would have been delivered the Jessica O'Shea.

## II. CONCLUSIONS OF LAW

LAW OFFICES
of
DENIS F. JODIS, P.C.

216 N. Main Street
Adrian, Michigan 49221
(517) 265-4415

a. <u>FFB Did Not Have a Properly Perfected Security Interest in All Assets of the Debtor.</u>

FFB admits that it did not file a UCC Financing Statement until May 13, 2012 in order to perfect the security interest it claims under Note 7837 (Exhibit E) or Note 4088 (Exhibit D).

The "Lender" that made loan No. 7837 and 4088 was FFB. All of the loan documents referred to the transaction as being made between FFB and Debtor. No mention or reference was made to <u>Bank of Lenawee</u>. As of the date of the merger, there is no question that FFB had the right, as a successor to <u>Bank of Lenawee</u>, to enforce and collect loans made by Bank of Lenawee. However, once those Bank of Lenawee loans were either paid off or renewed by using the assets and documents of FFB, the relationship between FFB and Debtor was solely between them.

The claimant's transactions, to the extent that they took place prior to May 13, 2012, should therefore result in the items purchased and paid for by them being awarded to them and not FFB.

These claimants are not bound by any stipulation or other agreements between the Debtor and FFB.

To the extent any part of the claimant's claim is subject to a properly perfected security interest in the collateral by FFB, it would be their position that they took free and clear of the security interest by virtue of their status as a buyer in the ordinary course of business. For reasons previously stated, none of the claimant's property should be denied them because of any claim that it was comingled with Debtor's property.

A determination that the claimant's interests are superior to FFB's interests with respect to the claimed property would give recognition of the failure of FFB to properly perfect its security interest and would otherwise carry out the intent of the UCC that buyers should not be required to go to extreme measures to make certain the property

LAW OFFICES
of
DENIS F. JODIS, P.C.

216 N. Main Street
Adrian, Michigan 49221
(517) 265-4415

they purchased and paid for from a business might be claimed by the lenders of the business if they fail to take what they bought with them.

DATE: December 21, 2012

                LAW OFFICES OF DENIS F. JODIS, P.C.

/s/ Denis F. Jodis
Denis F. Jodis (P15506)
216 N. Main St.
Adrian, MI 49221
(517) 265-4415
djodis@frontier.com

LAW OFFICES
of
DENIS F. JODIS, P.C.

216 N. Main Street
Adrian, Michigan 49221
(517) 265-4415

12-61274-wsd    Doc 70    Filed 12/22/12    Entered 12/22/12 13:03:33    Page 15 of 17

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

IN THE MATTER OF:

HUDSON BRICK YARD, INC.,
    Debtor.

Case No. 12-61274-wsd
Hon. Walter Shapero
Chapter 7

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of December, 2012, I electronically filed Claimants' Proposed Findings of Facts and Conclusions of Law and this Certificate of Service with the Clerk of the court using the ECF system which will send notification of such filing to the following:

    Basil T. Simon, Attorney for Debtors: via ECF

    Douglas Ellmann, Bankruptcy Trustee: via ECF

    U.S. Trustee: via ECF

and I hereby certify that I have mailed by United States Postal Service the paper to the following participants:

Christopher E. McNeely
Andrew M. White
Mittelstaedt & McNeely, P.C.
1700 W. Hamlin Rd., Suite 100
Rochester Hills, MI 48309-3372

James & Helga Austin
3203 Hoyer Road
Jackson, MI 49201

Mike Loomis
7885 Browns Lake Road
Jackson, MI 49201
Nite Lights of Jackson, LLC
7600 Folks Road
Horton, MI 49246

Rhonda Loomis
1431 Locust Street
Jackson, MI 49201
Jessica O'Shea
829 Westwood Blvd.
Jackson, MI 49203

William Bendley, Jr.
118 Main Street
PO Box 52
Cement City, MI 49233

Gary Spink
8537 Folks Road
Hanover, MI 49241

John Spink
7600 Folks Road
Horton, MI 49246

Tammi O'Shea
3043 Hatch Road
Jackson, MI 49201

LAW OFFICES
of
DENIS F. JODIS, P.C.

216 N. Main Street
Adrian, Michigan 49221
(517) 265-4415

Carl Brittain  
3043 Hatch Road  
Jackson, MI 49201

Heidi Brittain  
3043 Hatch Road  
Jackson, MI 49201

/s/ Gina M. Hicks
---
GINA M. HICKS, an employee at  
Law Offices of Denis F. Jodis, P.C.  
216 N. Main St.  
Adrian, MI 49221  
(517) 265-4415

LAW OFFICES  
of  
DENIS F. JODIS, P.C.

216 N. Main Street  
Adrian, Michigan 49221  
(517) 265-4415

12-61274-wsd    Doc 70    Filed 12/22/12    Entered 12/22/12 13:03:33    Page 17 of 17